Good morning. My name is Kurt Larson. I represent the Attorney General in this case. Mr. Singh failed to submit credible evidence to support his asylum claim. The immigration judge and the Board of Immigration Appeals gave specific and cogent reasons why Mr. Singh was incredible. If you look at the immigration judge's decision, it's 28 pages. Of that 28 pages, 13 of those pages are specifically set aside to go into detail as to why Mr. Singh was incredible. And it's interesting because, and there's numerous reasons why, but there's different categories. At certain points, the immigration judge found that Mr. Singh was inconsistent. At other times, he found that he shifted his responses and was evasive. At other times, he flat out didn't answer the questions. At other times, it was implausible. And overall, he questioned his demeanor. I think this is Judge Weber again, isn't it? I believe so, yes, sir. Yes, that's a she. So there's different categories that the immigration judge looked at in reviewing this case. Moreover, the immigration judge pointed out to counsels at the end, stating, I've also looked at the documents you've submitted, and I don't find that they have the indicia of reliability, so I'm going to discount those. So based on this 13-page detailed tome, whatever, review of what Mr. Singh stated, the immigration judge found to be incredible. Now, when Mr. Singh appealed to the Board of Immigration Appeals, out of those 12 pages, out of the numerous points that were made by the immigration judge, he only brought up two, actually about four, reasons why he came back and said, no, look at these issues. And in front of the Board of Immigration Appeals, they said, you know, looking at what you've given us, and they do look at the whole record. They don't just don't look at what the Petitioner's counsel states. They said, you haven't you failed to explain the inconsistencies, implausibilities, reasons for not responding to the immigration judge, and overall demeanor. So sometimes, I mean, when you start analyzing the things that the immigration judge said, some of them don't seem to me to hold up terribly well. This business of, well, why did you say you weren't going to the why did you say you were going to this town? Why didn't you say you were going to this town? I mean, there's an explanation for that. I was stopped before I got to that town, so I only told you the ones I had been to. I had posters in my car, and I was going to go to other places and stuff. It seemed to me, you know, a rather sensible explanation of that, and I didn't see the inconsistencies. I think at that point, he was asking you, he was asking you, okay, tell me exactly what happened up to this point. I went to this city, this city, and this city. And then when he came to his response on that one question, he said, what's actually going on this day? He said I was going to Dakar. I said, well, you mentioned all these cities. Why didn't you mention Dakar? It doesn't make sense. Granted. Understood. I agree with your point. I think it's minor. I think it's minor. But if you're taking a page out of a book, and I think you might want to do that, Mr. Wilson, okay, that one's a minor inconsistency. Let's put that off to the side. No, no. Wait a minute. I think Judge Canby said it's not an inconsistency. Could you explain why it is an inconsistency? Well, the judge – I would say it more of a confusing than inconsistent. On whose part? Because the immigration judge was confused. Pardon me? The immigration judge was confused when he listed these numerous places that he was gone, that he had gone. And then the immigration judge specifically said, what were you doing that day? He said, I was going to this city. He said, well, you've listed nine of them. It's not – it doesn't seem to me or it's not – it's confusing or I don't really understand where you're coming from. And he didn't really explain that. He just said that he just failed to mention it in his first litany of – Okay. Let me understand then. Do you think – do you agree that it is a – it is consistent or do you still contend it's an inconsistency? I think it's more confusing. I don't think it was inconsistent. Okay. But let's look at things that weren't inconsistent. It's really interesting if you look at some of them. One of the points that Mr. Singh made was that after he was beaten by the police, he went to find refuge in this temple. And if you look at his testimony, the first time that he says – and this is a pretty important point of his overall review of what happened to him. He said, I sought refuge in this temple. The first time he said he did it, he said he went for 30 days. The second time that he was asked, he said he went for 20 days. Then when the immigration judge said, wait a minute, looks in your – looked at your application and said you were there for a couple of months. Right, Honor? I don't really have an explanation for that. What's also interesting is if you look at the issue's brief, it says that he was there for 25 days. Was it 20, 25, 30, a couple of months? We don't know. A couple of months was I thought I would go there for a couple of months. I don't know that he said he was going to – No, I think it says I was there for a couple of months, Your Honor. Quote, got scared, went to Amistrad to spend a few months in the Golden Temple so the situation would cool off. Right. Now, maybe that means in the temple itself, maybe that means – I mean, that's a – We don't even have to go into conjecture on that, though, Your Honor. It's in his brief that he said that he was wrong, that he made a mistake. He said first he said a couple of months, then he said 20 days, and that was a mistake. Well, you know what? We understand. We had this earlier today. I prefer to look at what he said rather than what the brief says he said. Right, Your Honor. Understood. Well, let's look at what he said, and again, let's look at the temple. When he gave his statement on his asylum application, he states when he was at the temple, his wife came there and she stated that the police had been to their house and that they wanted all of the individuals, as well as they wanted the female individuals from the house, would be taken to the police station if he wasn't turned over immediately. Then, during his testimony, during his testimony, he states, no, the police came to my wife and said all individuals in the house, not just women, all individuals in the house will be taken if I don't – if I'm not turned in. Then if you look at the board appeal and the petitions of this Court, he goes back to his original one saying, no, it was just the women. So even – there's inconsistencies in his statement. Now, where does it say just the women? If you look at his asylum application, I believe it's around page 23 or 27. I think it's 245. 245, maybe? Second to the last paragraph? I've just got notes here. Okay. I'll take your time. I believe it's going to be there. I can read it. I think I can read the sentence you're referring to, if this may save time. My wife, meaning my wife, she said that the SHO warned us to arrest all the female members or produce me in jail. That's the sentence. Correct. It doesn't say just the women. It says all the women. All the women. Then he goes in his statement to the Court, the immigration judge said, you stated in your asylum application that it was just the women. He comes back and says, no, Your Honor, it's not just the women. It's all the individuals in my – in the household. Well, therefore, I read the all the women means – well, all the women, which might well mean even the women. So he was given the opportunity to explain that to the immigration judge. And in his explanation to the immigration judge, he says, no, I didn't – it wasn't women. It was everybody in the house. That's just the explanation I gave you. That is to say, in the written statement, he says all the women. Now, he doesn't say also all the men. He's simply referring to my wife says he's going to take all the women. Well, my wife isn't particularly concerned about the women. That's what my wife says, all the women. Now, that doesn't mean they're not also going to take the men. He later says, I meant everybody. Right. I don't see the inconsistency in it. And I think in his testimony, it pretty much goes and says that I was wrong in the beginning. It's all – it's everybody in the house. Now, where does it say I was wrong in the beginning? That's interesting. I hate to be such a stickler, but these are important words.  Absolutely. Here we go. Okay. Around page 96, I believe. I think we may do better. Page 124, 125. Okay. I think the explanation he's giving at the bottom of 124 and the top of 125 is the gloss I put on it. Isn't that right? It's taken, Your Honor. I think what he's saying at the bottom of 124 and the top of 125 is precisely the gloss I put on it. And I don't hear him saying – read him as saying I was wrong, I made a mistake or whatever. Now, am I misreading this? And I think that that is a difference that you perceive versus what the immigration judge was there. But I think it's a difference also from what you just said. Well, I understand your point and your gloss on it. I think you can also understand the immigration judge's gloss on it, that it was an inconsistency. And we'll also – At least I'm not sure I agree that it's an inconsistency. Right. Right. But the trier fact was there. He also noticed the demeanor of the individual, whereas this Court doesn't have the ability to do that. He also noticed. She also. That's right. So there's other things out there that, you know, and it was a – it wasn't just inconsistencies. Impossibilities move there. Because I've got five or six categories to go over with this Court. Oh, she gave us the kitchen sink. Right. So implausibilities. He stated that – and that's just – and I'd like to take a step back. It's almost like the immigration judge knew that this Court – this case was going to be appealed and knew that she was writing to this Court and knew what you wanted to have in a credibility finding to have it hold. Because if you look in the past, last night I kind of went over some of the cases that this Court has decided. And I said, hey, the Court acted on speculation or conjecture. No, the immigration judge didn't do that here. But the immigration judge didn't allow this person to explain himself. Absolutely, this immigration judge allowed the petitioner to explain himself. The immigration judge only looked at minor inconsistencies. And there was no evasiveness, inconsistencies on top of shifting and top of evasiveness. So, I mean, there are a plethora of reasons why she did it. Another reason was that, you know, he stated that he basically went into hiding after he was arrested the first time. And then the immigration judge said, wait a minute. Time out. It says in your, and he also stated, testified, that he would only do things outside of his city, outside of his city. That's all he did. I went into hiding. And when I did do something, it was outside of my city. Wait a minute. It says in your statement here that you actively sought out individuals to recruit. Yes, Your Honor, I was wrong. You're right. I did that, too. Well, explain that. Well, I kind of went into hiding for a while, and that was arrest, but now I'm back in full force. Okay, fine. You know, so there are a litany of reasons. Okay. And too many for you to go through in detail, but as you can tell, we've looked at it fairly carefully. Fine. Mr. Singh failed to present a credible request for asylum. The immigration judge spent an enormous amount of time specifically detailing the reasons for this. Mr. Singh is incredible. This Court must hold the decision of the immigration judge. Okay. Thank you for coming out. Now, do you have anything in response? Your Honor, I have a general response. When you're before Judge Weber, everything is very personal. You know, I think the record is built because it needs to be built. But when a client who comes from a small village, you know, doesn't have much education, he offers explanation, the answers are found to be not good explanations, and therefore, everything is always not explained, the person is not credible, he's lying in my face, and all of that. When you look at a small fact that I did everything in my city, my client comes from a small village. It's not possible to do too many activities in that village. So that explanation needs to be put in that context. The client admits that he did engage in certain activities, but explanation is not found to be credible. I think you have already went over the semantics of the statement, the explanation was given. And so I think it's just a perception issue, you know, which gets situated in the judge's mind. And the reason we picked only four particular situations to explain is that when we read the record, and having been at the court hearing with the client, we feel that when the BIA or the NICE record takes a look at the appeal, they will find that the client didn't try to hide anything, the explanation was given, the way the client could based on his education and background. Thank you very much. And thank you for coming in. We do appreciate this. My pleasure. On both sides. The last case on the calendar, Palsing v. Ashcroft, has now been submitted. That completes our oral argument for today and for the week. We are now in adjournment.
judges: Canby, W. Fletcher, Tallman